IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| TERRY FRAZIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO._____ |
| | ) |
| RELIANT BANK, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Terry Frazier, through counsel, for her cause of action states:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Terry Frazier, is a citizen and resident of the State of Tennessee who resides at 120 Charles Reed Court, Gallatin, TN 37066.

2. Defendant Reliant Bank is a Tennessee for-profit corporation with its principal office located at 1736 Carothers Pkwy, Suite 100, Brentwood, TN 37027. Defendant Reliant Bank may be served through its registered agent for service of process, Devan D. Ard Jr, 6100 Tower Circle, Suite 120, Franklin, TN 37067.

3. Jurisdiction is proper pursuant to 29 U.S.C. §201; 29 U.S.C. §216, 28 U.S.C. §1331 and 28 U.S.C. §1337(a).

1

4. Venue is proper pursuant to 28 U.S.C §1391 because Defendant transacts business in this district and most of the actions complained of occurred in this district.

**FACTAUL ALLEGATIONS**

5. Defendant, Reliant Bank Mortgage Services, (hereinafter Reliant) hired Plaintiff, Terry Frazier, (hereinafter Frazier) as Mortgage Loan Originator (MLO) on Decemer 15, 2016, the position he held until his termination under curious circumstances on December 24, 2018. A copy of Frazier's Loan Originator Employment Agreement is attached hereto as Exhibit 1. His employment agreement provides that Frazier was a "producing senior *inside sales* residential mortgage loan originator" that he was to be paid $7.25 per hour, plus commissions and bonuses. (emphasis added).

6. During his employment Frazier worked out of Reliant's Hendersonville location.

7. As an MLO Frazier was a non-exempt employee eligible for overtime, something that Reliant was well aware of due to the decision of *Perez v. Mortgage Bankers Association*, 135 S.Ct. 1199 (2015), as well as prior FLSA claims brought against Reliant by at least one loan originator.

8. When Frazier began his employment, Reliant instructed him to key in his hours worked into Reliant's time keeping system. However, after a few weeks it became apparent that his job required more than a 40-hour work week. To avoid paying overtime, Frazier was instructed by Reliant management to only key in 40 hours per week, regardless of how many hours he actually worked. From that point forward, his hours were keyed in once weekly to be exactly 40 hours, even though he typically worked 55 hours per week.

2

9. In late 2018 Reliant switched to a time keeping system that required real time clock in and clock outs rather than weekly entries. While at work, Frazier literally set an alarm on his phone to remind him when to clock in and clock out every day. Frazier typically arrived at the bank between 7:30 – 8:00 am, and left the bank around 6:00 pm. While working approximately 10 hours every day, Frazier would set his alarm to clock-in at 8:00am, clock-out at 11:00 am, clock back in at 11:30am and then clock out at 4:30 pm so the time records only reflected a 40-hour work week. His managers, Jamie Nix, LPO Manager, and Chris Payne, Sales Manager, considered it a running joke, told him "this is the dumbest thing ever," and that they were willing to just key them in weekly as they were apparently doing for other loan originators at the time.

10. In addition to spending approximately 10 hours per day working in the office during the week, Frazier typically worked 2-3 hours every Saturday. Moreover, due to the nature of the work, Frazier regularly had to respond to emails, answer and return telephone calls, and deal with Realtors well past 6pm. To facilitate this after-hours work, Reliant Bank's IT department set up his laptop so that he could remote in to the bank's server from his house. What is clear is that everyone, including Frazier's managers, were well aware that he was working in excess of 40 hours per week, but were falsely keying in 40 hours per week to avoid Reliant paying overtime.

11. While employed by Reliant, Mr. Frazier spent $5000 - $6000 monthly to various lead generation programs and advertising to generate leads and build his database. Frazier was instructed to use the company CRM software, Top of Mind to input his own personal leads into that he purchased. He was assured by Senior Management that his (Frazier's) leads and database were his, and would remain his should his employment with Reliant end. On June 1, 2017 Reliant agreed to reimburse Frazier a portion of his monthly expenditures on leads and

advertising and commenced paying him $1250.00 per pay period which Reliant labeled a "Discretionary Bonus." Over the course of his employment with Reliant Mr. Frazier spent $126,542.23 on advertising and lead generation to build his personal database. Since June 1, 2017 until his questionable termination he was paid $46,875.00 in Discretionary Bonus payments by Reliant, a difference of $79,667.23. Upon his termination Reliant has refused to turn over Frazier's personal database.

## COUNT I – FAIR LABOR STANDARDS ACT

12. Paragraphs 1 through 11 are incorporated herein by reference as though fully set forth.

13. Plaintiff brings the following cause of action against the Defendant: Willful failure to pay overtime compensation in violation of the Fair Labor Standards Act of 1938. See 29 U.S.C. §207.

## COUNT II– FRAUD AND/OR UNJUST ENRICHMENT

13. Paragraphs 1 through 11 are incorporated herein by reference as though fully set forth.

14. Defendant induced Plaintiff to invest $79,667.23 of his own money to generate leads and build his own personal data base by fraudulently misrepresenting that upon the termination of his employment his leads and database would remain Frazier's property. Upon his termination, however, Reliant has refused to turn over Frazier's leads and database, instead claiming it as bank property. Reliant has committed to the tort of fraud, for which Frazier is entitled to recovery his actual damages as well as punitive damages.

15. Alternatively, Frazier is entitled to be reimbursed by Reliant $79,667.23, plus interest, under the theory of unjust enrichment.

**PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiff prays for the following relief:

1. Judgment that Defendant has violated the overtime wage provisions of the FLSA, 29 U.S.C. §207 and that Plaintiff is entitled to overtime compensation for every hour he has worked over 40 hours per week while employed by Defendant.

2. Judgment that Defendants' violations of the FLSA were willful;

3. An award to Plaintiff of damages in the amount of unpaid overtime compensation to be proven at trial.

4. An award to Plaintiff of interest and liquidated damages in an amount equal to the overtime compensation shown to be owed to him pursuant to 29 U.S.C. §216;

5. An award to Plaintiff of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b);

6. A finding that Reliant has committed fraud and award Plaintiff his damages and also award Plaintiff punitive damages;

7. Alternatively, that Plaintiff be awarded his damages under the theory of unjust enrichment;

8. That a jury hear all triable issues; and

9. An award of such other and further legal and equitable relief as may be appropriate.

5

Respectfully submitted,

**MCCUNE ZENNER HAPPELL, PLLC**


  /s/ Mathew R. Zenner
**MATHEW R. ZENNER (#018969)**
5200 Maryland Way, Suite 120
Brentwood Tennessee  37027
Telephone: (615) 425-3476
Facsimile:  (615) 251-6958
Email: mzenner@mzhlawfirm.com
*Attorney for Plaintiff*